UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AMERICAN CONTRACTORS INDEMNITY COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-2948** |
| **DI GIOVANNI INSULATION & REFRACTORY, INC, EMILE DI GIOVANNI AND JANET DI GIOVANNI** | **SECTION: "S" (3)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that American Contractors Indemnity Company's motion for summary judgment is **GRANTED**. (Document #14.)

### I. BACKGROUND

This case arises out of a building contract between Steve Ho, as owner, and DiGiovanni Installation & Refractory, Inc. as contractor. American Contractors Indemnity Company (ACIC) issued surety bonds for DiGiovanni Installation, Emile DiGiovanni, and Janet DiGiovanni. DiGiovanni Installation and Emile and Janet DiGiovanni individually executed a general agreement of indemnity in favor of ACIC to induce ACIC to issue the bonds. Subsequent to the execution of the indemnity agreement, Ho and DiGiovanni Installation entered into a contract for

the construction of a project at 1601 St. Charles Avenue, New Orleans, Louisiana, entitled "Hoshun Chinese Cuisine Alterations and Additions to the Building." ACIC issued payment and performance bonds with Ho as the obligee and DiGiovanni Installation as the principal, each with a penal sum of $1,781,850. On October 4, 2002, at DiGiovanni Installation's request, ACIC issued a multiple obligee rider naming Omni Bank as an additional obligee on the bonds.

On July 22, 2004, Ho informed ACIC that Ho was considering a contractor default and asked to schedule a conference with ACIC and DiGiovanni Installation. On March 1, 2005, Ho informed DiGiovanni Installation and ACIC by letter that the contract for the Hoshun Chinese Cuisine project was "terminated for failure to comply with the contract documents." On March 4, 2005, Ho corresponded with ACIC, inquiring how ACIC intended to complete the project. After conducting an investigation, ACIC determined that the amount of remaining contract funds was insufficient to complete the project and that a number of the subcontractors and suppliers had not been paid.

Pursuant to the indemnity agreement, ACIC made a demand on the DiGiovannis to provide collateral to protect ACIC from losses on the bonds and claims.[1] The DiGiovannis did

---

[1] The indemnity agreement provides for collateral security as follows:
**6. COLLATERAL SECURITY** - If a claim is made against Surety, whether disputed or not, or if Surety deems it necessary to establish a reserve for potential claims, and upon demand from Surety, the Undersigned shall deposit with Surety cash or other property acceptable to Surety, as collateral security, in a sufficient amount to protect Surety with respect to such claim or potential claims and any expense or attorney's fees. Such collateral may be held or utilized by Surety (i) until it has received evidence of its complete discharge from such claim or potential claim, (ii) until it has been fully reimbursed for all loss, expenses, attorney's fees and unpaid premiums, and (iii) until it has been fully discharged with regard to any liability in connection with any Bond issued by Surety.

not provide the requested collateral.

On February 23, 2006, Ho filed suit on the payment and performance bonds against ACIC and others for damages of $2,021,850, and the payment of all liens. Omni intervened in the lawsuit, seeking a judgment for Ho's unpaid indebtedness to Omni as construction lender. On August 16, 2006, Ho, Omni, and ACIC settled the claims. ACIC paid jointly to Ho and Omni $650,000 and agreed that ACIC was responsible for any remaining claims of subcontractors and suppliers under the payment bond. ACIC made payments to the following subcontractors and suppliers of DiGiovanni:

| | |
|---|---|
| Louisiana Stucco & Masonry, Inc. | $95,247.50 |
| Carter & Sons Plumbing, Inc. | $ 1,558.17 |
| Highland Commercial Construction, Inc. | $63,000.00 |
| Schindler Elevator Corporation | $27,500.00 |
| Outlaw Industries, L.L.C. | $17,045.00 |

ACIC also paid attorney's fees, costs, and expenses of $86,466.01, and additional costs and expenses of $29,976.19.

ACIC filed this complaint against the DiGiovannis, pursuant to the indemnity agreement, seeking judgment for the full sum of the settled claims, plus attorney's fees, costs of the proceeding, and interest from the date payments were made.[2] ACIC filed a motion for summary judgment.

## II. DISCUSSION

### A. Summary judgment standard

---

[2] The complaint seeks $956,565.26 plus attorney's fees, costs, and interest. The amount at issue in the motion for summary judgment is $970,792.87.

3

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

**B.  Indemnity agreement**

The provision of the indemnity agreement which ACIC seeks to enforce provides in relevant part:

> **3. EXERCISE OF RIGHTS** - in furtherance of such indemnity:
>
> 3.1 Surety shall have the right in its sole and absolute discretion to determine whether any claims under any Bond or Bonds shall be paid, compromised, adjusted, defended, prosecuted or appealed.
>
> 3.2 Surety shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to the expenses for investigative, accounting, engineering and legal services.
>
> 3.3.  Surety shall have the foregoing rights, irrespective of the fact that the Undersigned may have assumed, or offered to assume, the defense of the Surety upon such claim.
>
> 3.4 In any claim or suit hereunder, an itemized statement of claims or losses paid or liabilities incurred or expenses paid or incurred, declared under penalty of perjury to be true and correct by an officer or Surety, or the vouchers or other evidence of

disbursement by Surety, shall be *prima facie* evidence of the fact and extent of the liability hereunder of the Undersigned.

3.5. Surety shall have the right to reimbursement of its expenses, premiums, and attorney's fees, including in-house attorney's fees, costs and expenses hereunder, irrespective of whether any Bond loss payment has been made by Surety. In any suit on this Agreement, Surety may receive its expenses and attorney's fees, including in-house attorney's fees, costs and expenses incurred in suit.

3.6. At the sole and absolute discretion of Surety, upon written notice to the Undersigned, the Undersigned shall defend surety, at the Undersigned's sole cost and expenses, and with counsel acceptable to Surety, in any suit, action or other proceeding initiated with respect to any Bond issued by Surety.

ACIC argues that the DiGiovannis are liable *in solido* to reimburse ACIC for the sums paid for the settlement under the performance bond, payment of claims to subcontractors and suppliers, attorney's fees, and expenses. ACIC contends that Ho placed the DiGiovannis in default and made demand on ACIC. After conducting an investigation of the claims and seeking collateral from the DiGiovannis, ACIC settled the claims.

The DiGiovannis argue that the provision in the contract giving ACIC "the right, in its sole and absolute discretion" to determine whether to pay the claims is contrary to La. Civ. Code art. 3050. Article 3050 does not apply in this case because it is a suit on a contract of indemnity, not on suretyship. See Commercial Union Ins. Co. v. Melikyan, 430 So.2d 1217, 1221 (La. Ct. App. 1983) (In a suit on a contract of indemnity, not suretyship, the contract forms the law between the parties and must be interpreted according to its own terms.). "[I]n an indemnity contract, the principal and indemnitors can be bound to the surety in any manner they elected in consideration of the surety issuing the bond covering the principal obligation." Id.

The DiGiovannis contend that ACIC was aware of disputes between Ho and the

DiGiovannis and of their position that Ho was in breach of the construction contract.  Because of the alleged breaches by Ho, the DiGiovanni's objected to any payments by ACIC to Ho, to the extent that ACIC intended to seek reimbursement for those expenditures from the DiGiovannis personally.  The DiGiovannis argue that ACIC paid the claims at their own risk because the DiGiovannis had specific defenses to the claims and were not notified that ACIC was settling them.

"The contract of indemnity forms the law between the parties and must be interpreted according to its own terms and conditions."  Abbott v. Equity Group, Inc., 2 F.3d 613, 627 (5th Cir. 1993).  "The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity."  Liem v. Austin Power, Inc., 569 So.2d 601, 608 (La. Ct. App. 1990).  "Interpretation of a contract is the determination of the common intent of the parties.  Soverign Ins. Co. v. Texas Pipe Line Co., 488 So.2d 982, 984 (La. 1986).  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  Id.  "Agreements to indemnify are strictly construed and the party seeking to enforce such an agreement bears the burden of proof."  Liem v. Austin Power, Inc., 569 So.2d at 608.

The indemnity agreement unequivocally and unambiguously gives ACIC the right "in its sole and absolute discretion" to determine if any claims shall be paid.  ACIC engaged the services of R. David Taylor, the vice-president of Roberts, Taylor & Sensabaugh, Inc., a nationwide consultant in surety, fidelity, and construction.[3]  Taylor met with Ho, the

---

[3] Def.'s exh. B, attachment 1.

DiGiovannis, the project architect, and the project manager. He concluded that there were insufficient remaining contract funds to complete the work and that numerous subcontractors and suppliers had not been paid.[4]

By letter of March 23, 2005, ACIC declined to complete the project under the performance bond.[5] ACIC sought "an amicable resolution," citing "numerous irregularities in the manner in which one or both of the obligees performed, or failed to perform, their obligations"[6] and a failure to mitigate damages by allowing the project to sit dormant for many months prior to terminating the contract.

By letter of April 7, 2005, the DiGiovannis stated their objection to any payment by ACIC, and informed that they would defend any claims by ACIC against them under the indemnity agreement.

The contract of indemnity giving ACIC sole and absolute discretion to determine whether the claims should be paid is the law between the parties. The DiGiovannis did not plead in their answer that ACIC lacked good faith in settling the claims, nor have they offered evidence that ACIC acted in bad faith. The DiGiovannis argue only that they had defenses to Ho's claim and present evidence only of their objection to any payment by ACIC.[7] The DiGiovannis'

---

[4] Def.'s exh. B.

[5] Def.'s exh. 1.

[6] The letter specifies Ho's failure to obtain a permanent building permit, misinformation to subcontractors regarding termination of the contract, unreasonable delays in approving drawings and design changes, failure to timely pay the architect, failure to relocate utilities timely, premature payments to DiGiovanni, failure to pay for "side deals" with DiGiovanni, and failure to mitigate damages.

[7] Def.'s exh. 2.

conclusory allegations are inadequate to sustain their summary judgment burden of putting forth evidence of the existence of a genuine issue for trial.

Pursuant to section 3.4 of the indemnity agreement, ACIC presents evidence of its payment of the claims under the surety bonds.  The DiGiovannis have not presented evidence to contest the accuracy of the reimbursement that ACIC seeks.  Accordingly, there are no genuine issues of material fact, and ACIC is entitled to judgment as a matter of law in the amount $650,000 for the settlement under the performance bonds, $204,350.67 for the settlement under the payment bonds, $86,466.01 in attorney's fees, and $29,976.19 in expenses for a total of $970,792.87, plus interest.

New Orleans, Louisiana, this   25th day of August, 2008.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**